## V. M. Thompson, Admr. of Rebecca Thompson, Deceased, Plff. in Err., *v.* Humboldt Safe Deposit & Trust Company, to Use.

In an action of scire facias to foreclose a mortgage it is no defense that the legal plaintiff gave no consideration for the mortgage; the mortgagor must go further and prove that the equitable plaintiff gave no consideration for it to the mortgagor or his agent.

Where land is mortgaged without consideration, for the purpose of enabling the mortgagee as the agent of the mortgagor to negotiate the mortgage, the want of consideration is no defense to an action on the mortgage by an assignee for valuable consideration.

(Argued April 29, 1887. Decided May 9, 1887.)

January Term, 1887, No. 73, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, and GREEN, JJ.  Error to the

NOTE.—The mortgagee in this case acted as the agent of the mortgagor in transferring the mortgage. Ordinarily the want of consideration can be set up by the mortgagor as against the assignee of a mortgagee who pays nothing for the assignment (Carothers v. Sims, 194 Pa. 386, 45 Atl. 47; Gill v. Hutchinson, 37 Phila. Leg. Int. 293) ; or a failure of consideration (Wilson v. Ott, 173 Pa. 253, 51 Am. St. Rep. 767, 34 Atl. 23) ; or illegality of consideration (Pearce v. Wilson, 111 Pa. 14, 56 Am. Rep. 243, 2 Atl. 99; Riddle v. Hall, 99 Pa. 116). Even if the assignee pays full value, he takes subject to defenses against the mortgagee, of which he is aware, or if he fails to inquire of the mortgagor. Theyken v. Howe Mach. Co. 109 Pa. 95; Myerstown Bank v. Roessler, 186 Pa. 431, 40 Atl. 963; Earnest v. Hoskins, 100 Pa. 551.

Thayer's Appeal, *ante*, p. 392, is to be distinguished from the principles noted in that the illegality of consideration did not arise between the mortgagor and mortgagee, but between the latter and the first assignee.

Common Pleas of Erie County to review a judgment on a verdict for the plaintiff in an action of scire facias sur mortgage. Affirmed.

The facts as they appeared at the trial before CHURCH, P. J., were stated in his charge to the jury, a portion of which was as follows:

This is an action brought upon a mortgage given upon the 7th of August, 1871, by Rebecca Thompson and husband to the Humboldt Safe Deposit & Trust Company. On the 8th of August, 1871, it was assigned to S. A. Davenport by the secretary and treasurer of the Humboldt Savings Bank, and by Mr. Davenport $3,000 thereof was assigned to Mr. John Burton a few days afterwards, and in 1874, some three years afterwards, the remaining $2,090 was assigned, a portion to Mr. Burton and another part of it to Mrs. Sprague, one Barnes having received an assignment of a portion of Mr. Burton's first assignment in 1872, so that this mortgage, after it became due,—some time afterwards,—was sued, and that suit is the one on trial.

A suit was necessarily brought in the name of the original mortgagee, the Humboldt Safe Deposit & Trust Company; that bank therefore sues, and stands on the record as suing for the use of S. A. Davenport now for the use of Burton, Barnes, and Sprague, and in my remarks I will have occasion to use some technical terms. When I use the term "mortgagors" I mean the defendants in this case, Mr. and Mrs. Thompson. When I use the term "legal plaintiff," or "original mortgagee," I mean the Humboldt Safe Deposit & Trust Company. When I use the term "first and equitable plaintiff," or "first and equitable assignee," it means Mr. Davenport, and the "equitable assignees," or "present equitable plaintiffs," means Mr. Burton and Mr. Barnes and Mrs. Sprague.

It is alleged that the defendants received none of the consideration of this mortgage, and that therefore they are not legally held by it. That evidence was rejected because the defendants did not offer to prove that these equitable assignees did not pay any money for the assignment. If it had been offered to prove that they had not paid anything for their assignment, we would have admitted that; but there was no such offer to prove that Burton and Barnes and Mrs. Sprague did not pay any money for their assignment.

[This mortgage was executed before a notary public, and Mrs. Thompson says she left it with the notary public, and Mr. Thompson says that he gave it to Mr. Davenport, or, to use his language, "left it with him." Mr. Davenport says that he left it with him for the purpose of negotiating and raising money for the benefit of the mortgagors, Mr. and Mrs. Thompson.]

[Mr. Thompson, if I recollect rightly, although he says he left it with Mr. Davenport, does not say for what purpose. It cannot be supposed that Mr. and Mrs. Thompson executed this mortgage to the Humboldt Safe Deposit & Trust Company for nothing,—just for the mere pleasure of executing it. They must have executed and left it with Mr. Davenport, for the purpose of raising money, especially if you believe the testimony of Mr. Davenport, for he testifies to that effect.]

It does not appear very clearly why the mortgage was executed to the Humboldt Bank. It may have been for the purpose of expecting to receive the money thereon from the Humboldt Savings Bank. It is alleged by the defendants or their counsel, —they offered to prove it,—or it was alleged in the argument, at least, that it was made to the Humboldt Savings Bank for the purpose of evading the usury laws and allowing 10 per cent to be received on the mortgage. And the defendants offered the charter of the Humboldt Savings Bank, giving them the right to charge 10 per cent; but this mortgage charges only simple interest, so that if the Humboldt Savings Bank advanced this money to Mr. and Mrs. Thompson, on the terms mentioned in the mortgage "with interest," they would only have been entitled to recover 6 per cent, and could not have recovered 10 per cent, although allowed to recover the same by their charter. But being so allowed by their charter the borrower or the mortgagor must agree to pay 10 per cent, and then it becomes legal according to the charter; so that there can be nothing in that. Even if it was true that this mortgage was given to the Humboldt Savings Bank to enable the bank or any of its assignees to recover 10 per cent, we say that it was a futile effort, and the bank did not undertake to receive 10 per cent, and it goes for nothing.

Mr. Davenport, however, explains that it was given for the purpose of having him negotiate the loan for the benefit of these mortgagors; and when the Humboldt Savings Bank declined to entertain the loan it was assigned to Mr. Davenport, and Mr.

Davenport says it was assigned to him for the purpose of enabling him to negotiate it wherever he could.

Mr. Davenport's name there, although the first equitable plaintiff, his name on the mortgage seems to be simply a bridge to carry the legal plaintiff over to some real, equitable plaintiff.

Mr. Davenport assigned, on the 8th of August, 1871, $2,000 of this mortgage to Mr. Burton. That was not the actual date that it was assigned on the record, because the mortgage was not recorded until the 16th of August, 1871, and hence, as a physical fact, it could not have been assigned on the 8th of August, 1871. It must have been after the 16th. But that is immaterial.

The question then is, Did Mr. Burton advance the sum of $3,000 to Mr. Davenport, as the agent for Mr. and Mrs. Thompson, at the time he took this assignment? If he did and if Mr. Davenport was their agent for the purpose of negotiating this mortgage, then Mr. Burton is entitled to recover the amount so advanced, with interest from the time of the advancement, less such interest as has been paid. So with Mr. Barnes and Mrs. Sprague. If they have advanced their money to Mr. Davenport, as agent and attorney, and for the use of these mortgagors, they took a good assignment of that portion of the mortgage that they claim, and are entitled to recover their portion of the assigned mortgage, with legal interest from the time of advancing the money until this date, less any interest that they may have received.

It is not alleged that Mr. Barnes or Mrs. Sprague received any interest; but there is evidence of Mr. Burton having received some interest, and that brings you to another feature of the case.

Mr. Thompson alleges that he paid $1,900 of interest to Mr. Burton on this mortgage. He says $1,200 was paid by Mr. Davenport for him and $700 in addition by himself. Mr. Davenport and Mr. Burton both testify that $700 was not so paid, and that the only sums that Mr. Burton ever received were: the $1,200, $300 in September, 1873; $300 in the fall of 1874, and $300 in the fall of 1875, and $300 in the fall of 1876. Mr. Davenport said nothing about the alleged $700. That is denied by Mr. Burton and Mr. Davenport. It is testified to with more or less distinctness by Mr. Thompson. The $300 paid in 1875 by Mr. Davenport to Mr. Burton, Mr. Davenport alleges, was not paid out of Mr. Thompson's money, but that he

advanced the money to Mr. Burton and took an assignment of a part of the mortgage; hence, if that is true, then that payment in the fall of 1875, of $300, would inure to the benefit of Mr. Davenport—not be allowed to be a credit on the mortgage as interest, because it was not Mr. or Mrs. Thompson's money that paid it.

Now, Mr. Thompson testifies substantially to the $300 in the years 1872, 1873, 1874, and 1876, and he says that Mr. Burton told him in 1876 that he had received all his interest up to that time. Now that was true, as a matter of fact, so far as Mr. Burton was concerned, and it will be for you to reconcile, if you can, that statement, which is admitted to be true by Mr. Davenport and Mr. Burton, with the further statement that Thompson paid $700 in addition to the moneys paid by Mr. Davenport and alleged to have been received by Mr. Burton.

When two persons of apparently equal repute testify to exactly opposite things, you will take other matters into consideration in determining whom you will believe. It is not always true that the greater number of witnesses should outweigh the less number; but you take other circumstances and facts into consideration. Did Mr. Davenport and Mr. Burton always take and give receipts? If so, it is a corroborating circumstance that would enable them to refresh their recollection of whether or not they received any more money—when Mr. Thompson testifies that he paid $700, whether he took a receipt. He says that he did not. Admitting that he did not even pay this actually to Mr. Burton, but deposited it in the Humboldt bank to his credit, could he be corroborated by any evidence? Could he by any of the bank books or in any other way? Would it be natural for him to have paid $700 and taken no receipt, or had no witnesses present, or taken no memoranda of the deposit in the bank?

Those are matters you have a right to consider in determining the probability of Mr. Thompson's testimony being true, as against Davenport's and Burton's. It is not always because a man testifies that a thing is so that the jury are bound to believe it. They cannot believe everything, when two witnesses testify to exactly the contrary. You must determine from other facts in the case who is entitled to a greater credit than the other.

Now the legal position taken by the defendants in this case I

cannot better state than by reading and answering the propositions which they have presented in writing to the court.

"1. If the jury find from the evidence that the Humboldt Safe Deposit & Trust Company had no interest in the mortgage in suit, did not pay any money on the same, the name of the bank being used without authority or any consideration therefor, a recovery could not be had in the name of the Humboldt Safe Deposit & Trust Company as legal plaintiff."

*Ans.* This point is refused. It is true that the bank could not recover for itself and in its own name; but if there are any equitable assignees who had in good faith paid money for their assignment to the defendants or their agents for their use, they may use the name of the bank as legal plaintiff, to enable them to prosecute this suit upon the mortgage.

"2. If S. A. Davenport, the first assignee, paid no money for the assignment to him of said mortgage, he had no interest in the same to entitle him to make assignment to Burton, Sprague, and Barnes."

*Ans.* This point is refused under the evidence, if Mr. Davenport was (as he swears to have been, and of which there is evidence that he was) simply a conduit to carry the title from the mortgagee, the legal plaintiff, to the assignee for value, the equitable plaintiff therein.

"3. If the legal plaintiff had no right or title to sustain an action, the equitable plaintiff can stand in no other position."

*Ans.* This point is refused. If the equitable plaintiffs obtained the several payments of the mortgage for value, they may use the name of the bank to sue. I mean by that that the Humboldt Savings Bank is not suing for their own use and could not sue for their own use if it is certain that they had not paid for any title, but they can be used, and so can Mr. Davenport, as the conduit, to enable the equitable title to become vested in the equitable plaintiff.

"5. If the jury finds from the evidence that John Burton was an officer or director of the Humboldt Safe Deposit & Trust Company at the time he took an assignment of the mortgage, he had knowledge of the fact that the bank had no interest in the same, or was in a position to know this fact from his connection with the bank; and he is not an innocent purchaser without notice, and he cannot recover."

*Ans.* This point is refused as stated. The conclusion stated

in the last paragraph of the point does not follow from the facts stated in the point itself.

"8. If Mrs. Rebecca Thompson received no money from the mortgagee, the Humboldt Safe Deposit & Trust Company, the equitable plaintiff cannot recover."

*Ans.* This point is refused. The receiving or nonreceiving by Mrs. Thompson of any money on this mortgage is not necessarily a criterion of the present assignee's and equitable plaintiff's right to recover. If the equitable assignee paid money to her agent for her use, and she received the benefit of it in accounts rendered for her and to her by Mr. Davenport, her agent, the equitable plaintiffs are entitled to recover.

"9. If the first equitable plaintiff knew the purpose for which the mortgage was to be used, to wit, the extinguishment *pro tanto,* of the Cunningham mortgage, but applied the money to another and different purpose, there can be no consideration to him."

*Ans.* This is refused. There is not sufficient evidence of the fact assumed to warrant the jury in finding the statement true; and even if there was such evidence, and the first equitable plaintiff was the attorney or agent of the mortgagees with power and authority to raise money for them on the mortgage, the mere fact that the proceeds of it were afterwards misapplied, although there is no evidence of that, would not defeat the rights of the equitable plaintiffs in good faith and for value to recover in this action.

"10. If the equitable plaintiff's consideration failed, he could not make a valid assignment to subsequent assignees."

*Ans.* This point is refused under the facts assumed and stated in the last point, *viz.,* that the first equitable plaintiff was the agent or attorney of the mortgagees to raise money for the use of the mortgagors.

"11. As the mortgage recited the property to be charged as the property of a married woman, it is incumbent on the mortgagee or his assignees to inquire if everything be regular; and on failure to do so, he cannot complain of being a purchaser without notice."

*Ans.* This point is refused; yet admitting the law as here stated to be true, the mortgagor or his assignees here do not complain of being purchasers without notice, but claim to be pur-

chasers of the mortgage for a valuable consideration paid by them at the time they became the assignees of the mortgage.

Now, you will see that the legal propositions, as determined by the court, are for your guidance in determining the facts in this case.   The plaintiffs do not claim the 10 per cent interest. They could not recover it if they did.   Their statement that they propose to send out to you is, so far as I judge, correctly stated, *viz.,* they calculate the interest on the $3,000 which Mr. Burton received in 1871, and until September, 1872, a period of about thirteen months, at 6 per cent; that would be some $180 or $190.

They add that to the principal and then deduct the payment of $303.50 from that sum.   Then the remainder is carried on as a new principal until the next year, when $303.50 was paid; and the interest on that is to be calculated and added to the principal and a new amount from which you will deduct the $303.50, and leaving another remainder to be carried on as principal.   This is upon the principle that partial payments upon a debt upon which interest is accumulating pays interest first before it pays principal.   On the amount of the mortgage assigned in 1874, $2,000 of it to Mr. Barnes and Mrs. Sprague, the plaintiffs do not claim any interest from 1871 to 1874.   That interest is not claimed by any of the plaintiffs, because that part of the mortgage was not negotiated until 1874, and interest is only to be calculated from 1874 to the present time on that sum.

If you find these facts that are submitted as stated, you find for the plaintiff upon the mortgage,—for the equitable plaintiffs for the sum as you calculate on the basis just stated to you.

Defendants' counsel asks the court to call the attention of the jury to the fact that in 1876 the rate of interest charged was 10 per cent; and 10 per cent upon the other $2,000 for a year and a half would just make the $1,900.

So far as the record shows, S. A. Davenport owned $3,000 of this mortgage until 1874.   There is no evidence that Mrs. Sprague or Mr. Barnes ever received any interest on this mortgage.   Mr. Burton is the only one alleged by the plaintiffs to have received any interest, and hence you would not be justified in finding that Mr. Barnes and Mrs. Sprague received any interest.   I see no reason to change.

You have a right to find that Mr. Thompson paid the $700, and that Mr. Davenport and Mr. Burton are mistaken, but you

would hardly be justified in finding that unless you find that Mr. Davenport and Mr. Burton are mistaken and Mr. Thompson is correct. You will consider all the circumstances which Mr. Thompson himself testifies surround the alleged payment of $700 in 1876. Mr. Thompson himself says that Burton told him in 1876 that the interest was paid up to that time. That would be true if you take the amount of interest that was admitted to have been paid by the plaintiffs; and that, Mr. Thompson says, was what Mr. Burton told him, and Mr. Thompson couldn't recollect the exact amount of money that he had paid him.

This mortgage provides that in case a suit has to be resorted to, an attorney's commission of 5 per cent is to be added to the principal and interest as a penalty or compensation to the plaintiff's attorney for bringing that action, and the defendants are bound by that obligation, and hence, whatever you find that the plaintiff is entitled to recover you will have a right to add 5 per cent thereon.

Plaintiff's counsel: "We have only added 5 per cent on the original sum."

*Ans.* Yes, sir; it is only on the principal sum.

Defendant's counsel: "It is struck out in the mortgage."

*Ans.* Then that part of the matter is withdrawn from your consideration. If that blank was not filled up in the mortgage the parties evidently intended it should not be filled up.

Verdict and judgment were for the plaintiff.

The assignments of error upon which stress was laid specified the portions of the charge inclosed in brackets, and the answers to the defendant's points.

*J. Ross Thompson* and *John P. Vincent* for plaintiff in error.

*Benson & Brainerd* for defendant in error.

PER CURIAM:

All questions relating to the agency of Mr. Davenport and his authority to act as attorney for Mr. and Mrs. Thompson were fairly submitted to the jury in a correct and impartial charge, and the points were correctly answered. The record shows no error.

Judgment affirmed.